```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| DAWN GUIDOTTI on behalf of herself and other class members similarly situated | HON. JEROME B. SIMANDLE<br><br>Civil No. 11-1219 (JBS/KMW) |
| Plaintiff, | |
| v. | **OPINION** |
| LEGAL HELPERS DEBT RESOLUTION, L.L.C., et al., | |
| Defendants. | |

APPEARANCES:

Joseph Michael Pinto, Esq.
POLINO AND PINTO, P.C.
720 East Main Street, Suite 1C
Moorestown, NJ 08057
     Counsel for Plaintiff

John A. Zohlman, III., Esq.
HAGNER & ZOHLMAN LLC
Commerce Center
1820 Chapel Avenue West, Suite 160
Cherry Hill, NJ 08002
     Counsel for Defendants J.G. Debt Solutions, L.L.C. and Joel
     Gavalas

**SIMANDLE**, Chief Judge:

I.   **INTRODUCTION**

     This action is before the Court on the motion of Defendants

J.G. Debt Solutions, L.L.C. and Joel Gavals ("J.G." or "moving

Defendants") to compel arbitration of Plaintiff's claims against

them.  [Docket Item 105.]  Plaintiff brings a putative class

action alleging a conspiracy to commit unlicensed debt adjustment

services in violation of the New Jersey Debt Adjustment and

Credit Counseling Act ("NJDACCA"), N.J. Stat. Ann. § 17:16G-1, et seq., the New Jersey RICO statute, N.J. Stat. Ann. § 2C:41-1, et seq., the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2, et seq., and various other common law causes of action. Plaintiff's Amended Complaint names twenty-two Defendants and charges all defendants collectively with eight different causes of action.

The instant motion to compel arbitration is the second time the Court has addressed motions to compel arbitration filed by Defendants in this action, the Court having previously considered two simultaneously filed motions to compel filed by other parties in its December 20, 2011 Opinion. Guidotti v. Legal Helpers Debt Resolution, L.L.C., --- F. Supp. 2d ---, 2011 WL 6720936 (D.N.J. Dec. 20, 2011) [Docket Item 102]. In that Opinion, the Court granted one motion to compel and denied the other. The Court granted the motion filed by Defendants related to the law firm of Legal Helpers Debt Resolution, L.L.C. (hereinafter referred to as Defendant LHDR, collectively referred to as the "Law Firm Defendants"), but denied the motion to compel filed by Defendants related to the Defendant financial institutions Rocky Mountain Bank & Trust and Global Client Solutions (the "Bank Defendants").

In the instant motion, the moving Defendants seek to compel Plaintiff to arbitrate her claims against them pursuant to the arbitration clause contained in the Attorney Retainer Agreement

2

signed by Plaintiff and Defendant LHDR.  In the Court's December 20 Opinion, the Court concluded that this arbitration agreement was enforceable as to Plaintiff's claims against the Law Firm Defendants.  J.G. now argues that Plaintiff should be compelled to arbitrate her claims against the J.G. Defendants as well, despite the fact that the moving Defendants were not parties to the agreement containing the enforceable arbitration agreement, known as the Attorney Retainer Agreement (the "ARA").

The principal issue to be decided is therefore whether the Court should compel Plaintiff to arbitrate her claims against the J.G. Defendants pursuant to the ARA, either under the terms of the agreement itself or under a theory of equitable estoppel.  As explained below, the Court concludes that equitable estoppel applies in this case to compel Plaintiff to arbitrate her claims against Defendants J.G. and Joel Gavalas.  Accordingly, the Court will grant Defenants' motion to compel.

**II.   BACKGROUND**

The Court incorporates the extensive factual background contained in the December 20, 2011 Opinion, and expands upon it here only to focus on Plaintiff's allegations regarding and claims against Defendants J.G. and Joel Gavalas.  Unless otherwise noted, the following facts are those alleged in the Amended Complaint or included in indisputedly authentic

documents, the existence of which Plaintiff alleges in her Amended Complaint.

Plaintiff alleges that in September of 2009, she called Defendant J.G. Debt Solutions, seeking help to reduce or negotiate a settlement of some of her debt rather than file for bankruptcy, and spoke on the telephone with Defendant Joel Gavalas.  Am. Compl. ¶ 21.  Gavalas described a "debt reduction program" in which he suggested that Plaintiff's "credit card debt could be cut in half and paid off within three years."  Id. Gavalas explained that Defendant Eclipse[1] would evaluate her financial situation to determine whether she "qualified" for the program, and that if she did, a payment program would be prepared for her.  Id.

Some time after this initial call, Gavalas called Plaintiff back and informed her that "she had been accepted in the program" and that Eclipse had proposed two alternate plans for participation in its program.  Id. ¶ 22.  She was offered a three-year plan in which she would pay approximately $358 per month or a five-year plan in which she would pay approximately $200 per month.  Plaintiff chose the three-year plan.  Id.

---

[1] Eclipse Servicing, Inc. is one of the "Law Firm Defendants" previously dismissed on December 20, 2011, pursuant to its motion to compel arbitration.  Plaintiff alleges that Eclipse contracted with LHDR to provide customer service and also hired J.G. to provide leads such as Plaintiff to Eclipse and LHDR.

4

In this conversation, Plaintiff was also informed that she would be represented in the debt negotiation process by attorneys from LHDR. Gavalas then "asked a series of questions to which Plaintiff had to respond" which was recorded. Id. Plaintiff alleges that this was her final contact with J.G.; she alleges that it was J.G.'s practice to tell customers such as Plaintiff at this point "not to call J.G. again, rather any future contacts were to be through LHDR and Eclipse who were in the same office in Florida." Id. at ¶ 70.

Plaintiff further alleges that J.G. had contracted with Eclipse to provide marketing and to feed potential clients (such as Plaintiff) to LHDR and Eclipse for debt adjustment services.[2] Id. at ¶ 62. Further, Plaintiff alleges that Defendant Gavalas and other employees of J.G. were trained by a representative of Eclipse on how best to generate leads for LHDR and Eclipse, including how to interact with potential clients, such as Plaintiff, when one should call seeking debt relief services, as Plaintiff did in September of 2009. Id. at ¶ 63. Indeed,

---

[2] Defendants J.G. and Gavalas have filed a cross-claim for breach of contract and indemnification in this action against Eclipse and LHDR. [Docket Item 35.] J.G. and Gavalas attach a copy of the contract between J.G. and Eclipse to their cross-claim. Plaintiff has filed a copy of this contract, titled the "Independent Marketing Agreement" in her briefing in opposition to the instant motion to compel. [Docket Item 118.] This document appears to be an indisputably authentic document whose existence was alleged in the Amended Complaint, and will therefore be considered in resolving the instant motion.

5

Plaintiff alleges that the entire script that Defendant Gavalas guided Plaintiff through followed the training program was directed by Eclipse, and was designed to funnel potential clients such as Plaintiff toward Eclipse and LHDR.  Id. at ¶ 64.

Plaintiff later was contacted by Eclipse directly with more detailed information regarding the proposed debt-adjustment program initially described by Gavalas over the telephone; included in these materials was the Attorney Retainer Agreement ("ARA") that included an arbitration clause.  Plaintiff signed the ARA and returned it to Eclipse.  Id. ¶ 28.

The ARA covers several aspects of the services that LHDR and Eclipse would provide to Plaintiff, including a limitation on the scope of representation LHDR would provide, and set out Plaintiff's payment schedule to Eclipse.  The ARA also included an arbitration clause, which states, in part,

> **Arbitration**:
> In the event of any claim or dispute between Client and LHDR related to the Agreement or related to any performance of any services related to this Agreement, such claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request. . . .

ARA ¶ XVIII.

Plaintiff alleges that she paid more than $5,000 to LHDR and Eclipse (and other Defendants, but not J.G. or Gavalas) over the following fifteen months.  Am. Compl. ¶ 28.  Specifically, the ARA sets out that Plaintiff would pay LHDR an initial flat fee

retainer of $500.  ARA ¶ VIII.  Additionally, the ARA establishes that Plaintiff would pay a "service fee" to Eclipse of 15% of her total scheduled debt.  Id.  In Plaintiff's case, as her total scheduled debt was listed as $19,550, this service fee amounted to $2,932.50, to be paid in 15 monthly installments.  Id. Schedule B.  During the time that Plaintiff was making monthly payments to Eclipse and LHDR, she did not make any payments on her outstanding debts, eventually resulting in at least three of her creditors suing her to recover the debts she owed.  Am. Compl. at ¶¶ 31-37.

　　Plaintiff does not allege that she paid any money directly to Defendant J.G. or Gavalas.  Instead, they appear to have been paid on commission from Eclipse, in an amount pegged to the amount of debt and fees they channeled toward Eclipse and LHDR.  According to the Independent Marketing Agreement between J.G. and Eclipse, J.G. would be paid a commission by Eclipse

> based on the total debt amount of a lead for qualified leads approved by [Eclipse] and accepted for retention by the law firm [LHDR], for the non-legal services provided to and paid by a client.  A qualified lead converts into a client upon approval by both [Eclipse] and LHDR and upon the $500 Attorney Retainer Fee being received by LHDR.  The non-legal services are fifteen percent (15%) of total debt amount of a lead called service cost.  Compensation will be sixty percent (60%) of the service costs [Eclipse] received from a client and will be paid to [J.G.] and may be amended from time to time upon the mutual agreement of [Eclipse] and [J.G.].

7

Independent Marketing Agreement at ¶ 2, attached to Plaintiff's supplemental opposition, Docket Item 118.

The Court therefore reads the Independent Marketing Agreement together with the ARA and notes that the two contracts appear to have been drafted to be compatible with each other. The Court calculates that in this case, the amount of money that J.G. and Gavalas were to be paid by Eclipse under the Independent Marketing Agreement for their service of directing Plaintiff to Eclipse was 60% of the 15% service fee Plaintiff paid to Eclipse (or 60% of $2,932.50), an amount equal to approximately $1,759.50.

In other words, Plaintiff alleges that she was deceived by Defendants J.G. and Gavalas into contracting with the Law Firm Defendants and the Bank Defendants in the hopes that the Law Firm Defendants would convince her unsecured creditors to settle her consumer debts without requiring that she declare bankruptcy. Instead, Plaintiff alleges that Defendants J.G. and Gavalas, along with the Law Firm Defendants and the Bank Defendants, conspired to fleece her (and others similarly situated) of her remaining assets without negotiating with her creditors or protecting her from her creditors when they sued to collect on their debts.  Plaintiff alleges that she was injured through the fees she paid to Eclipse and LHDR (much of which was paid back to J.G. by Eclipse in the form of a commission), and through the Law

Firm Defendants' failure to perform under the ARA or otherwise protect her from her creditors.

Plaintiff filed her initial Complaint in the Superior Court of New Jersey, Burlington County, on January 28, 2011. Defendant LHDR removed the action to this Court on March 4, 2011. [Docket Item 1.] Thereafter, Plaintiff filed her Amended Complaint. [Docket Item 4.] Plaintiff's Amended Complaint names twenty-two Defendants, and seeks relief through nine counts against all Defendants collectively.

On December 20, 2011, the Court entered its Opinion and Order, which granted certain motions to dismiss and motions to compel, but denied others. [Order, Docket Item 103.] The Court dismissed sixteen of the eighteen Defendants that had moved to dismiss, denying dismissal only as to Defendants Global Client Solutions ("Global") and Rocky Mountain Bank & Trust ("RMBT"), two of the Bank Defendants. In its Opinion, the Court concluded, among other things, that the ARA's arbitration clause was valid and enforceable not only as to LHDR, the only contracting party to the ARA besides Plaintiff, but also as to the other Law Firm Defendants, such as Eclipse and the individual officers of LHDR and Eclipse. The Court concluded that the terms of the arbitration clause in the ARA covered disputes between Plaintiff and LHDR and its agents or independent contractors related to the ARA, which includes Plaintiff's claims against the Law Firm

9

Defendants.³

Four named Defendants in the Amended Complaint were not involved in the prior motions to compel or otherwise dismiss. Defendants J.G. and Gavalas were among the Defendants that did not join the original motions. They filed the instant motion to compel arbitration after the Court had issued its December 20, 2011 Opinion and Order, and now seek a similar order dismissing Plaintiff's claims as to them for the same reasons the Court dismissed the Law Firm Defendants.

**III.   DISCUSSION**

   **A.   Standard of Review**

In this Circuit, when a defendant moves to compel arbitration based on the terms of an agreement that forms the basis of the Plaintiff's claims, and an indisputably authentic version of the agreement is before the court, a motion to compel arbitration is properly evaluated under the standard of a Rule 12(b)(6) motion to dismiss. <u>Somerset Consulting, LLC v. United</u>

---

³ The Court denied the Bank Defendants' motion to compel arbitration after concluding that there was insufficient evidence in the record that Plaintiff had agreed to arbitrate her claims against Defendants Global and RMBT under the separate arbitration agreement contained in the Account Agreement and Disclosure Statement ("AADS"). <u>Guidotti</u>, --- F. Supp. 2d ---, 2011 WL 6720936 at *17. The Court did not address, because the Bank Defendants did not raise, the issue of whether Plaintiff should be compelled to arbitrate her claims against the Bank Defendants pursuant to the arbitration agreement in the ARA.

Capital Lenders, LLC, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011).

In its review of a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). The Court, in evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, may consider the complaint, exhibits attached thereto, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

**B. Discussion**

As the Court of Appeals has repeatedly emphasized, "the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, provides that arbitration agreements are enforceable to the same extent as other contracts, and establishes a strong federal policy in favor of the resolution of disputes through arbitration." Morales v. Sun Constructors, Inc., 541 F.3d 218, 221 (3d Cir. 2008) (internal quotations and citations omitted). "Section 2 of the . . . FAA makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." AT&T Mobility LLC v.

Concepcion, -- U.S. --, 131 S. Ct. 1740, 1744 (2011) (quoting 9 U.S.C. § 2).

In the instant matter, the Court has already concluded that a valid agreement to arbitrate exists in the ARA, and further concluded that Plaintiff's claims against the Law Firm Defendants fall within the scope of that agreement. The questions raised by the J.G. Defendants' motion to compel are rather whether Plaintiff's consent to arbitrate in the ARA should be construed to compel her to arbitrate her claims against J.G. and Gavalas, who were not signatories to the arbitration agreement, and, if not, whether the arbitration should be compelled anyway pursuant to the doctrine of equitable estoppel. The Court concludes that equitable estoppel applies to Plaintiff's claims against J.G. and Gavalas, and that therefore the Court must grant Defendants' motion to compel.

1. Equitable Estoppel

In the Court's December 20, 2011 Opinion, the Court concluded that

> the ARA's arbitration provision is enforceable as to all of the Law Firm Defendants. Defendants argue that, in addition to LHDR (the contracting party) the ARA's arbitration clause also governs parties sufficiently related to LHDR under the contract, which includes Eclipse and the individual officers of the two organizations. It is well settled that "agency and contract principles enable courts to consider nonsignatories as parties to the arbitration provision." Crawford v. West Jersey Health Sys., 847 F. Supp. 1232,

> 1243 n.14 (D.N.J. 1994). Even were the Court to consider Eclipse and the individual Law Firm Defendants to be "independent contractors" of LHDR (as Plaintiff suggested for the first time in oral argument), the Court would still find that the ARA arbitration agreement covered Plaintiffs' claims against such defendants under the "equitable estoppel" doctrine discussed in Bruno v. Mark MaGrann Assoc., 388 N.J. Super. 539, 548 (App. Div. 2006) (holding that claims against independent contractor of signatory to arbitration agreement must be arbitrated because such claims were sufficiently "closely aligned" with claims against the contracting party).

Guidotti, --- F. Supp. 2d ---, 2011 WL 6720936 at *13. The moving Defendants argue that the same principles apply to them as to Eclipse and the other non-signatory Law Firm Defendants. Therefore, Defendants argue, while J.G. and Gavalas are only independent contractors rather than agents of LHDR or signatories to the ARA, the same principle of equitable estoppel applies to them as to Eclipse.

In EPIX Holdings Corp. v. Marsh & McLennan Companies, Inc., 410 N.J. Super. 453 (App. Div. 2009), the New Jersey Appellate Division explained that

> New Jersey law recognizes non-signatory standing to compel arbitration based on the principle of equitable estoppel. The estoppel inquiry is fact specific, but usually involves an analysis of the connection between the claim, the arbitration agreement and the parties. Thus, we have recently cited with approval JLM Indus., Inc. v. Stolt-Nielsen, S.A., 387 F.3d 163, 177-78 (2d Cir. 2004), which held that a 'non-signatory to [an] arbitration agreement may compel [a] signatory

13

>     to arbitrate when [the] issues to be litigated
>     are intertwined with [the] agreement
>     containing [the] arbitration clause.'

EPIX, 410 N.J. Super. at 463 (some internal citations omitted). Defendants cite this case, and others like it from the New Jersey Appellate Division, such as Bruno, cited in the Court's December 20, 2011 Opinion, for the proposition that the Court should compel Plaintiff (a signatory to a valid arbitration clause in the ARA) to arbitrate her claims against them because those claims are sufficiently intertwined with Plaintiff's claims against LHDR involving the ARA.

Plaintiff opposes this motion on several grounds. First, Plaintiff argues that the terms of the arbitration agreement in the ARA explicitly limits the scope of the agreement to arbitrate. Plaintiff points to the first sentence of the arbitration clause, which states that "[i]n the event of any claim or dispute between Client and LHDR related to the Agreement or related to any performance of any services related to this Agreement, such claim or dispute shall be submitted to binding arbitration. . ." ARA ¶ XVIII (emphasis added). Plaintiff argues that because the arbitration clause is limited to disputes between Plaintiff and LHDR, it cannot be read to encompass claims between Plaintiff and nonsignatories like J.G. and Gavalas. The Court finds this argument unpersuasive, noting that it has already concluded that Plaintiff can be compelled to arbitrate

14

claims against other Defendants beyond LHDR (such as Eclipse and the other Law Firm Defendants) if her claims against those other Defendants are sufficiently intertwined with LHDR and the ARA as to justify an order compelling arbitration on the principle of equitable estoppel.  The same conclusion will therefore apply to Defendants J.G. and Gavalas.

Second, Plaintiff argues that her claims against J.G. and Gavalas are not sufficiently intertwined with the ARA to justify that she be compelled to arbitrate those claims under equitable estoppel.  Plaintiff cites the Appellate Division case of Angrisani v. Financial Tech. Ventures, L.P., 402 N.J. Super. 138 (App. Div. 2008), in support of her argument.  In that case (which, the Court notes, predates EPIX), the Appellate Division held that equitable estoppel could not be applied to compel a plaintiff-signatory to arbitrate claims against a non-signatory merely because his claims were "intertwined" with claims against a party to a valid arbitration agreement.  Angrisani, 402 N.J. Super. at 154-55.  Instead, the Appellate Division held that a plaintiff's claim should not be compelled to arbitration unless the plaintiff's claims against the non-signatory "presume the existence" of a contract with an arbitration clause and rely on such a contract to state a claim for relief against the non-signatory.  Id.

Plaintiff therefore argues that she should not be compelled

to arbitrate her claims against J.G. and Gavalas because her claims against them do not presume the existence of the ARA nor do her claims rely on the ARA to state a claim against them. Plaintiff argues that her injuries caused by J.G. and Gavalas arose from J.G.'s Independent Marketing Agreement with Eclipse, not from the ARA.  Plaintiff further points out that J.G. and Gavalas are not contractually related to LHDR in any way; they were not signatories to the ARA, and LHDR is not a signatory to the Independent Marketing Agreement between J.G. and Eclipse.

The Court is not persuaded by Plaintiff's arguments and instead concludes that Plaintiff's claims against J.G. and Gavalas should be compelled to arbitration based on equitable estoppel.  Plaintiff seeks relief from J.G. and Gavalas under exactly the same counts as against the Law Firm Defendants.  She alleges that J.G. and Gavalas conspired with the Law Firm Defendants to engage in unlawful debt adjustment and the unlicensed practice of law in New Jersey, allegedly constituting a violation of the N.J. RICO statute; that they collectively violated her rights under the NJCFA; that the acts of the Defendants (collectively) constituting debt adjustment activities have damaged Plaintiff, who are therefore entitled to damages pursuant to the NJDACCA; along with various other state common-law claims.  Am. Compl. ¶¶ 75-104.

The Court therefore concludes that Plaintiff's claims

against J.G. and Gavalas, specifically, are sufficiently "intertwined" with her claims against LHDR under the ARA to warrant that those claims be compelled to arbitration, even under the narrower standard of Angrisani, 402 N.J. Super. at 154. Plaintiff's claim for damages under the NJCFA and the NJDACCA both include the allegation that she was "damaged" by the collective scheme of J.G., Gavalas, Eclipse and LHDR. Indeed, she alleges no facts in her Amended Complaint constituting damages or an ascertainable loss other than the fees she paid to the Law Firm Defendants or the Bank Defendants. The injuries she claims to have suffered from J.G. and Gavalas stem from the fact that J.G. and Gavalas directed her to Eclipse and LHDR, who did not lawfully perform the debt settlement negotiation services she expected to receive under the ARA. Plaintiff could not state a claim for damages under either the NJCFA or the NJDACCA against J.G. or Gavalas alone, as she does not allege that she suffered any damages from those Defendants alone. That J.G. and Gavalas were not signatories to the ARA, and that LHDR is not a signatory to the Independent Marketing Agreement does not change the fact that Plaintiff seeks to recover damages from J.G. and Gavalas due, in part, to LHDR's failure to perform under the ARA, and due to the allegedly illegal nature of the services promised under the ARA.

Finally, Plaintiff argues that compelling her to arbitrate

her claims against J.G. and Gavalas is inconsistent with an aspect of the Court's December 20, 2011 Opinion, which denied the motion to compel arbitration by Defendants Global and RMBT. Plaintiff incorrectly construes the Court's Opinion to hold that "Global and Rocky [RMBT] cannot take advantage of the LHDR arbitration clause because of its limitations as outlined above, its lack of a close relationship with LHDR and the absence of nexus between the claims and the contract." Opp. Brief at 31. This is an incorrect summary of the Court's holding regarding Defendants Global and RMBT. Those Defendants based their motion to compel entirely on a different arbitration clause contained within the AADS, which the Court concluded could not be enforced because it was not clear, based on the record, that Plaintiff had agreed to the terms of the AADS. See supra, note 3. Defendants Global and RMBT did not raise, and the Court did not address, whether Plaintiff's claims against them should be compelled to arbitration based on the doctrine of equitable estoppel due to the valid and enforceable arbitration clause contained in the ARA. Accordingly, the Court concludes that nothing in its December 20, 2011 Opinion is inconsistent with the finding that Defendants J.G. and Gavalas should be compelled to arbitration on a theory of equitable estoppel arising from the ARA.

Therefore, as Plaintiff's claims for relief against J.G. and Gavalas are sufficiently intertwined with her claims against the

Law Firm Defendants, and such claims rely on the existence of the ARA to state a claim against J.G. and Gavalas, the Court concludes that she must now be equitably estopped from avoiding the obligation to arbitrate disputes related to the ARA to which she consented.

### IV. CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion to compel, and will accordingly dismiss Defendants J.G. Debt Solutions, L.L.C. and Joel Gavalas from the action.  The accompanying Order will be entered.

**August 7, 2012**　　　　　　　　　　　**s/ Jerome B. Simandle**
Date　　　　　　　　　　　　　　　　　JEROME B. SIMANDLE
　　　　　　　　　　　　　　　　　　　Chief U.S. District Judge